## Case No. 3,875.

### The DIADEM.

### [4 Ben. 247.][1]

District Court, E. D. New York.  June, 1870.

DELIVERY OF CARGO—TENDER OF FREIGHT—LEAK-AGE—STEVEDORE.

1. Where casks of wine were stowed in a ship by stevedores, employed, directed and paid by the shippers, and on delivery two of them were found to be nearly empty: *Held*, that even if the loss had been the result of bad stowage, as it had not been proved to be, the ship was not responsible for it.

[Cited in The T. A. Goddard, 12 Fed. 184; Guerard v. The Lovspring, 42 Fed. 860.]

2. On the arrival of a ship at New York, her consignees published a notice, stating the place of discharge, and calling on consignees to attend to the receipt of their goods, and giving notice that all goods remaining on the dock after five o'clock p. m., would be stored at the risk and expense of the consignees of the goods. Under this notice thirty-five of thirty-nine casks of wine, composing one consignment, were discharged and delivered to the consignee, without objection and without any demand of freight. The delivery of the other four was refused to the carman, unless the freight was paid. The consignee of the wine being informed of this, with reasonable dispatch caused the freight to be tendered to the master of the ship on board, and demanded the four casks which were then on the wharf, it being then almost five o'clock. The master declined to receive the freight, or deliver the casks, for the reason, that he did not know the correct amount, and that the place to pay the freight, was the office of the consignees of the ship, but offered to deliver the casks, if a sum much larger than the freight was deposited with him as security. The consignee did not assent to this, and the goods were sent to a storehouse. This was on Saturday. On Monday morning the consignee of the wine paid the freight to the consignee of the ship, who received it and tendered an order on the warehouse, for the delivery of the goods on payment of charges. The consignee of the goods refused to accept such an order, and thereafter filed a libel against the ship, to recover the value of the goods: *Held*, that the master of the ship, when the freight was tendered to him at the ship, had the right to take a reasonable time to ascertain the correct amount of the freight, but had not the right meanwhile to store the goods at the expense of the owner.

3. *Held*, that the ship was liable for the value of the goods.

This was an action to recover the value of certain casks of wine, which were shipped on board the bark Diadem at Marseilles, consigned to order at New York. Upon the arrival of the vessel in New York, the consignees of the bark published the usual notice of the arrival of the vessel, stating her place of discharging, calling on consignees to attend to the receipt of their goods, and giving notice that all goods remaining on the wharf after five o'clock p. m., would be stored at the risk and expense of the consignees.

Under this notice the vessel began to discharge, and thirty-five of the casks of wine, which composed the consignment in question, were delivered to the libellant, Joseph Buisson, as they came out, without objection

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

and without any demand of freight, two of the thirty-five, thus received being nearly empty. The remaining four casks came out on Saturday, and their delivery was refused to the carman, unless the freight was then paid. The consignee, on being notified of this fact, with all reasonable dispatch, caused the freight to be tendered to the master of the ship on board, and demanded the four casks then on the wharf ready for delivery, the discharging for the day not being ended, although it was just about five o'clock p. m.

The master of the ship declined to receive the freight tendered, and refused to deliver the casks, assigning as a reason, that he did not know the amount of the freight. At the same time while he referred the consignee to the office of the consignee of the ship, as the place to pay the freight, he offered to deliver the casks as demanded, if a sum, exceeding by a considerable amount the freight actually due, were deposited with him as security therefor.

The libellant not assenting to this, the goods were not delivered on Saturday, but were sent to store subject to the order of the consignees of the ship. On Monday morning the libellant paid the freight to the consignees of the ship, who received the same, and tendered to the libellant an order on the storehouse, for the delivery of the goods, on payment of the charges i. e., cartage and a month's storage. The libellant declined to pay the charges and demanded an order, on which he could obtain his goods, free of all charges. This was refused. Thereafter this action was commenced in which the libellant seeks to recover the value of the four casks not delivered to him, and the loss on the two casks which were delivered nearly empty of their contents.

Francis H. Dykers, for libellant.

James K. Hill, for claimant.

BENEDICT, District Judge. As to the claim for the wine lost from the two casks, I am of the opinion, that upon the proofs the libellant cannot recover that portion of his demand. The cause of the loss of the wine, was doubtless owing to the pressure of the cargo, and the heavy weather. The proofs do not make out a case of bad stowage; and if they did the ship would not be responsible, as this wine was stowed in the ship by stevedores employed, directed and paid by the shippers of the wine.

As to the four casks demanded on Saturday and not delivered. I consider the libellant entitled to recover their value. These casks were duly demanded of the master of the ship, at the ship, during proper hours, and when they were on the wharf for delivery. The demand was accompanied with a tender of all the freight due on the whole consignment, of which all, but these four casks, had already been delivered without objection or demand of freight.

There is no evidence of a notification to the libellant, that he must pay his freight at the office of the consignee of the ship, nor that a pre-payment must be made before delivery, and the delivery of the casks was offered, provided a sum greater than the freight was deposited with the master.

The master of this ship, having designated his consignees to collect his freight, and having deposited with them his bills and documents, showing the amounts of the freight, had the right upon the tender of freight being made to him at the ship, to take a reasonable time to enable him to ascertain the correctness of the amount of the freight, before accepting the tender and delivering the cargo; but he had no right meanwhile to store the merchandise at the expense of the freighter. It is not shown that any difficulty existed to prevent his taking in these four casks, and holding them until Monday, which was the earliest time at which the freight could be ascertained by him, or be paid at the office of the consignee. Nor under the circumstances of this case, could the master be held to have the right to store the goods at the expense of the consignee after tender of freight, were it to be considered proved, as the claimants insist, that according to the usage of this port, in the case of a foreign ship, freight must be always paid in advance, and to the consignee of the ship alone. For here the greater part of the consignment was delivered without any payment or demand of freight, or any order of the consignee, and the master offered to deliver the balance on a deposit being made with him. And when the libellant was notified of the stoppage of the four casks, it was at such a late hour on Saturday, that the libellant was justified in proceeding at once to the ship, where the demand of freight had been made, to pay his freight there in time to prevent his goods from going to store. The freight being then tendered and refused, he was, even under the usage as claimed, entitled to a reasonable time, after he was notified, to proceed to the office of the consignee, and there pay his freight. This was not afforded him, but the goods were at once stored, and thus subjected to cartage, and a month's storage.

The position taken on the trial, that the master was justified in refusing to deliver the casks, when the freight was tendered, because no bill of lading or other evidence of property was there produced, is untenable, for the reason that the libellant's right to receive the goods had already been acknowledged by the delivery to him, of the greater part of the consignment.

The libellant was justified in refusing to pay the charges on the goods, and, having paid all the freight due and demanded his goods free of charges, on being refused became entitled to maintain an action for the non-delivery of the four casks, according to the bill of lading.

The decree will accordingly be that the libellant recover the value of the four casks, with interest and costs. Let a reference be had to ascertain the value of these casks, if it cannot be agreed to.